UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES ANTHONY CAMAROTA, SR., : | Civil Action No. 05-cv-2359 |
| Plaintiff, : | |
| v. : | **OPINION** |
| THE MAYFAIR ORGANIZATION, ZEO : | |
| BROTHERS PRODUCTIONS, INC. : | |
| (discovery purposes only)and : | |
| THE MAYFAIR FESTIVAL OF THE : | |
| ARTS, j/s/a : | |
| Defendants. : | |

**APPEARANCES:**

Richard L. Press, Esquire
Press & Taglialatella, LLC
23 East Black Horse Pike
Pleasantville, New Jersey 08232
*Attorney for Plaintiff*

Timothy J. Schipske, Esquire
Salmon, Ricchezza, Singer & Turcher, LLP
Tower Commons
123 Egg Harbor Road, Suite 406
Sewell, New Jersey 08080
*Attorney for Defendant, Mayfair, Inc.*

**HILLMAN**, District Judge

This matter has come before the Court on the motion of defendant Mayfair Organization and Mayfair Festival of the Arts ("Mayfair"), for summary judgment on plaintiff's personal injury claim. For the reasons expressed below, Mayfair's motion will be denied.

### I. **JURISDICTION**

This Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff is a citizen of New Jersey. Defendants Mayfair and Zeo Brothers Productions ("Zeo") are incorporated and have their principal places of business in Pennsylvania.  Plaintiff claims that the amount in controversy exceeds $75,000.00.

### II.   **BACKGROUND**

On May 2, 2005 plaintiff filed a Complaint against defendants Mayfair and Zeo alleging personal injury.  The parties do not dispute the following facts.

The Mayfair Organization runs the Mayfair Festival of the Arts which takes place annually in May at Cedar Beach Park in Allentown, Pennsylvania.  Mayfair retained Zeo to perform work at the Festival of the Arts in May 2003 including the set up of sound and lighting equipment to be used at the festival. Plaintiff claims that on May 22, 2003 he was injured when a volunteer at the festival named Roberto Maisonet allegedly caused a speaker cabinet to fall on his ankle.  Plaintiff, contending that he was injured during the course and scope of his employment with Zeo, sought worker's compensation benefits in Pennsylvania and was subsequently awarded and received benefits through Pennsylvania Worker's Compensation.

Defendant Mayfair now moves for summary judgment

arguing that Pennsylvania's "borrowed servant doctrine" brings the volunteer employee who allegedly caused plaintiff's injury under the auspices of Zeo.[1]  With Zeo classified as the employer for purposes of liability, Mayfair further argues, plaintiff's claim should be barred by the exclusive remedy principle of the Pennsylvania Worker's Compensation Act.[2]

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the

---

[1] While the parties appear to agree that Pennsylvania law governs the action, the court still finds it necessary to conduct a choice of law analysis and, as explained below, ultimately determines that Pennsylvania law applies.

[2] The Pennsylvania Worker's Compensation Act provides that "[t]he liability of an employer under this act shall be *exclusive and in place of any and all other liability* to such employee, his legal representative, husband or wife, parents, dependents, next of kin, or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in § 301(c)(1) and (2) or occupational disease as defined in § 108. 77 Pa. Con. Stat. Ann. § 481(a) (emphasis added).

nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Choice of Law**

As a District Court in New Jersey sitting in diversity, we apply New Jersey's choice of law rules.  See Aetna Sur. and Cas. Co. v. Sacchetti, 956 F. Supp. 1163, 1168 (D.N.J. 1996).  New Jersey applies the "governmental-interests analysis" to determine which state's laws apply.  See P.V. v. Camp Jaycee, 922 A.2d 761, 763 (N.J. Super. Ct. App. Div. 2007)(citing Rowe v. Hoffman-La Roche, Inc., 917 A.2d 767 (N.J. 2007).  First, it must be determined whether an "actual conflict" exists.  Id.  (other citations omitted).  If an actual conflict exists, then the Court must determine the interest each state has in the dispute and "apply the law of 'the state with the greatest interest in governing the issue.'"  Id. (other citations omitted).  Because this case hinges on identifying either Mayfair or Zeo as the employer of the volunteer employee, Pennsylvania and New Jersey law on borrowed employees must be examined to determine if a conflict exists.

Under Pennsylvania law, the borrowed employee doctrine predominately focuses on the right to control the manner in which the employee performs the work.  JFC Temps, Inc. v. Workers' Compensation Appeal Board, 680 A.2d 862, 865 (Pa. 1996).

> The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it.  The entity possessing the right to

> control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. The payment of wages may be considered, but is not a determinative factor. Although the examination of these factors guides the determination, each case must be decided on its own facts.

Id. at 864 (citations omitted).

In contrast, the New Jersey Supreme Court determines liability of general employers for the alleged negligence of special (borrowed) employees by applying a two prong test: (1) whether the general employer had the right to control the employee, and (2) whether the employee was working to further the business of the general employer. Galvao v. G.R. Robert Const. Co., 846 A.2d 1215, 1220 (N.J. 2004). "[T]he threshold inquiry is whether the general employer controlled the special employee." Id. Either direct or broad control by a general employer would satisfy the first prong of the test in New Jersey. Id. at 1221. If the general employer did exercise such control, then it must be ascertained whether the special employee furthered the business of the general employer. Id. If the special employee is found to have furthered the business of the general employer, then the second prong is satisfied and the general employer may be held liable for the alleged negligence of a special employee. Id.

Because Pennsylvania courts use an approach that

focuses on the right to control the manner of performance and New Jersey courts use an alternate approach that combines control with business-furtherance, an "actual conflict" exists and, therefore, this Court must next assess the interest each state has in the dispute. In this case, Plaintiff is a citizen of New Jersey and New Jersey has a clear interest in protecting its citizens who may have a personal injury claim. However, Pennsylvania serves as the place of incorporation and principal place of business for both defendants, and most importantly, the alleged negligent conduct and injury occurred in Pennsylvania. As the New Jersey Supreme Court stated in Fu v. Fu, 733 A.2d 1133, 1142 (N.J. 1999), "when both conduct and injury occur in a single jurisdiction, with only 'rare exceptions, the local law of the state where conduct and injury occurred will be applied' to determine an actor's liability." Id. (citing § 145 comment d). "[A] state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there." Id. Based on a governmental interests analysis, Pennsylvania has an overriding interest in having its law on borrowed employees applied to this personal injury action.

### C. Analysis of Defendant's Motion for Summary Judgment

In this case, the parties' disagreement pertains to whether an agency relationship existed between the volunteer

employees and Mayfair, and whether Zeo served as the borrowing employer of Roberto Maisonet, the volunteer employee who allegedly caused the accident.

The law of agency in Pennsylvania indicates that a volunteer can be considered as part of an employer-employee relationship.  Pennsylvania law looks to the Restatement (Second) of Agency which states that "a master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.  A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master."  See <u>Gajkowski v. International Bros. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America</u>, 504 A.2d 840, 849 (Pa. Super. Ct. 1986); <u>see also</u> Restatement (Second) of Agency § 2(1) and (2).  The Comment to § 220 of the Restatement further provides that the word "employed" in this context is not intended to connote solely a contractual or business relation between the parties.  Restatement (Second) of Agency § 220(1) Comment(b).  The relation between servant and master may rest upon the most informal basis such as where the owner of a car invites a guest to drive the car temporarily in his presence or to assist him in making minor repairs.  <u>Id.</u>

In addition, Pennsylvania courts have also followed the Restatement (Second) of Agency § 225, which states that "one who volunteers services without an agreement for or expectation of reward may be the servant of the one accepting service." See Jackson v. Capello, 191 A.2d 903, 906 (Pa. Super. Ct. 1963). The law recognizes the possibility of an unpaid, or volunteer, master-servant relationship. Biedenbach v. Teague, 166 A.2d 320, 323-24 (Pa. Super. Ct. 1960) (following Restatement (Second) of Agency § 225); see also McMahen v. White, 30 Pa. Super. 169 (1905)("Where a person undertakes voluntarily to perform services for another, who assents thereto, he stands in the relation of servant to the latter.")(citations omitted). As a matter of law, a recipient of services may be liable for the negligence of a volunteer if the recipient accepted and benefitted from them. Radbill v. Chambersburg Hosp., 46 Pa. D. & C.3d 431, 432 (Pa. Com. Pl. 1986). Within a relationship categorized as master-servant (employer-employee), a master can be liable for the servant's negligent acts committed within the scope of his employment because the master has the right to control the physical activities of the servant within the time of the service. Gajkowski, 504 A.2d at 849 (citing Restatement (Second) of Agency § 219; Prosser, The Law of Torts § 69 (3d ed. 1964)).

However, when "an employee [is] furnished by one entity to another", the employer-employee relationship may be altered by

9

the borrowed employee doctrine. Accountemps v. W.C.A.B. (Myers), 548 A.2d 703, 705 (Pa. Cmmw. Ct. 1988). The identity of the true employer must be determined for purposes of establishing liability for the negligent acts of the borrowed employee. The courts in Pennsylvania have adopted seven principles to assess who is the employer of a borrowed employee. See Williams v. Delta Truck Body Co., Inc., 892 F.2d 327, 330 (3d Cir. 1989) (hereinafter the "Williams principals"). The applicable six principles of those seven[3] are set forth below:

> (1) [O]ne who is in the general employ of one employer may be transferred to the service of another in such a manner that he becomes an employee of the second employer;
> (2) whether or not the transferred employee becomes the employee of the second employer depends on whether the first employer passes to the second employer not only the right to control the employee's work, but also his manner of performing it;
> (3) it is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised;
> ...
> (5) facts which indicate that an employee remains in the service of his original employer include the original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place, the loaned employee's possession of a skill or special training required by the work for the second employer, and employment at a daily or hourly rate for no definite period;
> (6) the fact that the second employer designates the

---

[3] The fourth principle concerns those "engaged in the business of renting out trucks" and is therefore not applicable here. Williams, 892 F.2d at 330.

10

>     work to be done and where it is to be done does not
>     militate against the first employer-employee
>     relationship; and
>     (7) when the facts are undisputed, the determination of
>     who is the employee's employer is one of law, but when
>     the facts are disputed, the determination is one of
>     fact.

Williams, 892 F.2d at 330 (summarizing Mature v. Angelo, 97 A.2d 59 (Pa. 1953)).

The overriding factor in determining "whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it." JFC Temps, Inc., 680 A.2d at 864. Consequently, to decide whether Mayfair or Zeo was the employer of Roberto Maisonet, the volunteer employee who allegedly caused the accident, we must examine the evidence in the record to determine whether a material issue of fact exists as to which employer had the right of control over the manner in which he performed his work.[4]  If the uncontested facts show

---

[4] Mayfair argues that the Court should not consider plaintiff's argument in so far as it is based on the "K & K Insurance Group Interview of Heather Kichline" because it is "an unsworn, uncertified, out-of-court statement." The general rule in the Third Circuit is that evidence capable of being admissible at trial can be considered on a motion for summary judgment. Stelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc., 63 F.3d 1267, 1275 (3d Cir. 1995) (citations omitted). Courts may consider evidence that is not admissible in the submitted form if the party offering the evidence could satisfy the applicable admissibility requirements at trial. Robinson v. Hartzell Propeller Inc., 326 F. Supp.2d 631, 645 (E.D. Pa. 1994)(citations omitted). For example, hearsay evidence could be produced in a

that Mayfair "lent" Maisonet to Zeo then it follows that plaintiff's claim is barred.  If, on the other hand, Zeo has proffered sufficient facts from which a jury could conclude that Mayfair retained control of Maisonet, Mayfair's motion must be denied.

Mayfair first claims that the Event Production Bid that Zeo submitted to them demonstrates the transfer of control of the volunteers.  While the Event Production Bid does provides for "ten able-bodied persons to assist in the load in & setup, teardown & loadout of all ZBP equipment," Zeo has denied that

---

motion for summary judgment if the out-of-court declarant could later present that evidence through direct testimony, which is an admissible form for trial. Id.  The Court finds that even though the interview with Heather Kichline in its present form would not be admissible at trial, it can be considered on a motion for summary judgment because it is capable of being admissible at trial because Heather Kichline can be presented in court as a witness. See Proctor v. ARMDS, Inc., No. 04- 899(PGS), 2006 WL 3392932, at *4 (D.N.J. Nov. 21, 2006)(stating that "hearsay evidence produced in sworn testimony may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e. 'in a form that would be admissible at trial." ')(quoting Williams v. West Chester, 891 F.2d 458, 466 n. 12 (3d Cir. 1989)).

Mayfair further contends that the testimony of Terrence Glennon, who was hired as executive director of Mayfair in February 2006, cannot apply to "incidents or occurrences which occurred approximately 3 years before his taking over." (Def.'s Rely Br. 10.)  The Court cannot consider Glennon's testimony as applying to the year of the accident when he did not have personal knowledge of the festival procedures during that year. See King v. City of Philadelphia, 66 Fed. Appx. 300, 304 (3d Cir. 2003)(noting that because "deposition testimony is not based on personal knowledge, it should not be considered on a summary judgment motion."); cf. Fed. R. Evid. 602 (testimony of lay witness must be from personal knowledge).

they were provided ten able-bodied persons to assist them.  More importantly, even if they were provided with some volunteers to aid them, Mayfair has failed to establish that Roberto Maisonet, the volunteer who allegedly caused the injury, was a part of that particular group.

Secondly, while the first <u>Williams</u> principle acknowledges the ability of one employer to transfer the services of an employee to another employer, the transfer of control is not enough to create an employer-employee relationship; the second <u>Williams</u> principle indicates that the first employer must also pass the right to control the employee's manner of performing the work.  See <u>Williams</u>, 892 F.2d at 330.  Our review of the record on this point also suggests that a material issue of fact remains.

Defendant Mayfair largely bases its argument of control on the deposition testimony of Daniel Zeo, in which defendant asked:

> Q: Now, these Mayfair volunteers, they were out—out there to help out the Zeo Brother Production employees, technicians, whatever, to set up the stages; correct?
> A: Correct.
> Q: They were—the Mayfair volunteers were basically doing the carrying and the lifting and things of that nature for the Zeo Brother Production folks to set up the stages?
> Q: Is that correct? Yes?
> A: Yes. Correct.
>
> (Zeo Dep. 54:10-25, July 18, 2007.)
> ...

13

>       Q: Okay. All right. So if we--if we get rid
> of the term "stage manager," or things of that nature,
> would it be fair to presume that if articles, lighting,
> sound equipment, musical instruments are being brought
> on to the stage to be dispersed around that stage,
> they're doing it under the auspices of the Zeo
> Productions?
>       A: Right.

(Zeo Dep. 56:13-21.)

In our view, volunteers in general helping out "under the auspices of Zeo Brothers" may not be equivalent to Zeo holding the right to control the manner of performance of this partciular volunteer who allegedly caused the injury.  Mayfair further contends that plaintiff's own testimony points towards Zeo as the employer in control.  Mayfair calls attention to plaintiff's deposition in which he testified that he received instruction from "Sammy", another Zeo employee, who was dictating the arrangement of equipment on the stage.

The problem with this argument is that it merely serves to prove who the plaintiff was working for at the time and not the entity controlling the work of the allegedly borrowed employee, Maisonet.  As plaintiff points out, Daniel Zeo's testimony taken as a whole presents a more complicated picture:

>       Q: They were taking--they would take their
> instruction from the Zeo Production employees or stage
> manager in regard to carry this here, do that there,
> those types of things; correct?
>       A: Usually there's a stage manager from the
> organization helping out with that.  I don't recall if
> he was there at the time.

>       (Zeo Dep. 55:12-19.)

> ...
> A: No. [Plaintiff] couldn't be the stage manager because that's a volunteer's or an organization's position.

(Zeo Dep. 55:25-56:3.)  This testimony clearly suggests that while the plaintiff admittedly considered himself the "stage manager" for the purposes of Zeo's work, that Zeo recognized and expected that a Mayfair employee had the same title and performed similar stage management duties on behalf of Mayfair.

There is supporting evidence for this position. Plaintiff highlights statements made by Heather Kichline as further evidence that Mayfair stage managers retained the right to control the volunteer employees.

> Q: Tell me again how the volunteers are assigned?
> A: I'll have a stage manager each day and usually stage hands, and they would be there to help set the stage, set up instruments on stage for the performers, clean the stage if it needed cleaning. Very rarely did they touch any sound equipment unless they were asked, but that was very rare.

(Kichline Doc. 4.)

Beyond this record evidence raising a material issue of fact concerning control in general, plaintiff also presents specific evidence on the issue of the actual control of the activities of Roberto Maisonet.  More specifically, plaintiff testified that at some point during the day prior to the incident, Kichline approached Plaintiff and introduced him to

15

Chris Ynangst, the stage manager for Mayfair (Camarota Dep. 64:17-21, Jan. 11, 2007.)  Plaintiff further testified that the stage manager introduced him to Maisonet saying "this is Roberto, he is a stagehand, if you need something, he is here to help." (Camarota Dep. 66:17-19.)  Plaintiff argues that this interaction demonstrates that a Mayfair stage manager had the right of control over the particular volunteer employee at issue.  We agree that a reasonable fact finder could find this a persuasive fact. See English, 428 A.2d at 323 (finding that borrowing employer must have significant control over the manner in which the workers carried out the work to which they were assigned). As set forth in the fifth Williams principle, a Mayfair stage manager instructing Roberto Maisonet where to go may also indicate the original employer's retention of control.

As for the issue of actual control or manner of performance, Mayfair has presented no evidence that Maisonet acted at the direction of plaintiff, "Sammy", Daniel Zeo, or any other Zeo employee.  In stark contrast is plaintiff's deposition testimony that he had observed Maisonet moving equipment cabinets in a negligent fashion earlier, and that while he did not know who was directing Maisonet at the time it was not at his direction or the direction of any other Zeo employee.

The clear import of all of the record testimony taken as a whole is that there is sufficient evidence for a reasonable

16

fact finder to conclude that Maisonet was on the stage at the request and acting as an agent of Mayfair not Zeo.  Accordingly, we conclude that the moving party, Mayfair, has, at this stage, failed to demonstrate the absence of a genuine issue of material fact regarding who had the right to control, and who actually controlled, the manner in which Roberto Maisonet performed his work.  Because the record is indeed replete with disputed facts regarding the issue of whether the volunteer employee was employed by Mayfair or Zeo at the time of Plaintiff's accident, the borrowed servant issue should be submitted to the jury for decision.[5]  "Where it is not entirely clear who was the controlling master of the borrowed employee, and different inferences in that regard can fairly be drawn from the evidence, it is for the fact finder to determine the question of agency." Stine v. Borst, 205 A.2d 650, 655 (Pa. Super. Ct. 1964).  Because there is a genuine issue of material fact concerning whether Zeo or Mayfair served as the true employer of the volunteer employee, Defendant Mayfair's motion for summary judgment must be denied.[6]

---

[5] We note further that it appears uncontested that Mayfair had an elaborate program to solicit and retain a large number of volunteers for the Mayfair Festival and compensated the volunteers through food vouchers.

[6] Defendant Mayfair also makes much of what it considers plaintiff's allegedly fraudulent and even criminal conduct relating to his disability and tax status.  While we do not condone such conduct, if true, we fail to see how these allegations preclude an award for damages if defendant is found responsible for the conduct of a negligent employee-volunteer.

**IV.  CONCLUSION**

For the foregoing reasons, defendant Mayfair's motion for summary judgment will be denied.  An appropriate Order will be entered.

```
Date: September 29, 2008       _____
                                _s/Noel L. Hillman_____
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.
```